# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for Morgan Stanley Capital Inc. Trust 2006-HE2 Mortgage Pass-through Certificates, Series 2006-HE2,<br><br>Plaintiff,<br><br>v.<br><br>BENDEX PROPERTIES LLC.,<br><br>Defendant. | CIVIL ACTION NO. 3:16-cv-00432<br><br><br>(SAPORITO, M.J.) |

## <u>MEMORANDUM</u>

This is an action for declaratory relief under 28 U.S.C. § 2201. The basis for federal subject matter jurisdiction is diversity of citizenship under 28 U.S.C. § 1332. Accordingly, although federal law governs whether we can properly render declaratory judgment, the substantive law of Pennsylvania applies in this matter. *See generally Liberty Mut. Ins. Co. v. Sweeney*, 216 F.2d 209, 210 (3d Cir. 1954); *Am. Motorists Ins. Co. v. Mack*, 248 F. Supp. 1016, 1018 (E.D. Pa. 1965).

The plaintiff, Deutsche Bank National Trust Company, as Trustee for Morgan Stanley Capital Inc. Trust 2006-HE2 Mortgage Pass-through Certificates, Series 2006-HE2 ("Deutsche Bank"), is the assignee of a

mortgage on real property located at 727 N. Lincoln Avenue, Scranton, Pennsylvania, formerly owned by Tiffany F. Buck, the mortgagor (the "Property"). Deutsche Bank filed the complaint in this matter on March 10, 2016, seeking declaratory judgment against defendant Bendex Properties LLC ("Bendex"). (Doc. 1). Bendex is the current owner of the Property, having purchased it at a judicial tax sale on April 20, 2015. A second defendant, the Lackawanna County Tax Claim Bureau (the "Bureau") was subsequently granted leave to intervene as an additional defendant in this action. (Doc. 20; Doc. 21).

Deutsche Bank seeks a declaration by this Court that either (a) the judicial tax sale to Bendex is void *ab initio* because the petition for judicial tax sale, the rule to show cause, and the judicial sale deed identify the Property by the wrong street address; or alternatively (b) Deutsche Bank's lien on the Property was not discharged by the judicial tax sale because it did not receive adequate notice of the judicial tax sale, and thus Bendex took the Property subject to Deutsche Bank's mortgage lien.

The parties have filed cross-motions for summary judgment. (Doc. 30; Doc. 36). These motions are fully briefed and ripe for disposition.

## I.  MATERIAL FACTS

The Property is located at 727 North Lincoln Avenue, Scranton, Pennsylvania. The Property is also identified on the county tax maps as Parcel No. 14510-040-030. The prior record owner of the Property was non-party Tiffany F. Buck.

On December 2, 2005, Buck executed a promissory note in favor of non-party Decision One Mortgage Company, LLC ("Decision One") in the amount of $108,000 plus interest. The note was secured by a mortgage on the Property, executed that same day. The mortgage instrument named Buck as mortgagor/borrower, Decision One as the lender, and non-party Mortgage Electronic Registration Systems, Inc. ("MERS") as the mortgagee. The mortgage instrument identified the address for MERS as "P.O. Box 2026, Flint, MI 48501-2026." It identified the address for Decision One as "6060 J.A. JONES DRIVE, SUITE 1000, CHARLOTTE, NORTH CAROLINA 28287." It identified the Property as

> the following described property located in the County of Lackawanna:
>
> SEE ATTACHED SCHEDULE "A"
>
> which currently has the address of 727 N LINCOLN AVE[,] SCRANTON, Pennsylvania 18504 ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property.". . .

The attached schedule provided the following legal description of the Property:

ALL that certain lot, piece or parcel of land situate in the 21st Ward of the City of Scranton, County of Lackawanna and State of Pennsylvania, designated and described as follows, to wit:

BEING Lot numbered seven (7), in Block numbered thirteen (13) upon the Northwesterly side of Lincoln Avenue; said Lot being forty (40) feet in width in front on said Lincoln Avenue, the same width in the rear, and one hundred forty-four (144) feet deep to a Court for public use fourteen (14) feet wide, as designated and laid out on the plot or map known as West Park, which map is duty [*sic*] recorded in the proper office for the Recording of Deeds, etc., in and for said County of Lackawanna, in Map Book Numbered 1, at pages 98 and 99, as by reference thereto had will more fully and at large appear.

BEING Parcel No. 14510-040-030 and Map No. 21-120-7

MERS recorded the mortgage with the Lackawanna County Recorder of Deeds on January 12, 2006, as Instrument Number 200601097.

Buck fell into arrears on both this mortgage and the real estate taxes due on the Property. On or about September 29, 2014, the Bureau exposed

the Property to a public upset sale, but a sufficient minimum bid was not received. *See generally* 72 P.S. § 5860.601 *et seq.*

On or about January 22, 2015, the Bureau filed a Petition to Sell Tax Delinquent Property at Judicial Sale Free and Clear of All Liens and Encumbrances with the Lackawanna County Court of Common Pleas (the "Petition"). The Petition was docketed as case No. 15-cv-205, and it described the subject property as "747 North Lincoln avenue, Scranton, PA[,] Tax Map No. 145.10-040-030[,] more fully described on Exhibit "A" attached hereto." Exhibit A to the Petition was a copy of a special warranty deed conveying the Property to Tiffany F. Buck, dated December 2, 2005, and recorded with the Lackawanna County Recorder of Deeds on January 12, 2006, as Instrument Number 200601096. The attached deed provided the following legal description of the Property:

> ALL that certain lot, piece or parcel of land situate in the 21st Ward of the City of Scranton, County of Lackawanna and State of Pennsylvania, designated and described as follows, to wit:
>
> BEING Lot numbered seven (7), in Block numbered thirteen (13) upon the Northwesterly side of Lincoln Avenue; said Lot being forty (40) feet in width in front on said Lincoln Avenue, the same width in the rear, and one hundred forty-four (144) feet deep to a Court for public use fourteen (14) feet wide, as designated and laid out on the plot or map known as West Park, which map is duty

[*sic*] recorded in the proper office for the Recording of Deeds, etc., in and for said County of Lackawanna, in Map Book Numbered 1, at pages 98 and 99, as by reference thereto had will more fully and at large appear.

BEING Parcel No. 14510-040-030 and Map No. 21-120-7

BEING THE SAME premises which Betty L. Fletcher, as power of attorney for Marilyn Jean Lewis by Deed dated October 13, 2000 and recorded October 16, 2000 in Book 324, Page 327 in and for Lackawanna County granted and conveyed unto Tiffany F. Panek, GRANTOR HEREIN

The Petition also included, as an attached exhibit, a record search showing record ownership of the Property and all claims, liens, and encumbrances of record as of January 5, 2015. In addition to the record owner, Tiffany F. Buck, the Petition identified all parties with interests in the Property, so they could be served with appropriate notice. The Petition explicitly listed mortgagee "Mortgage Electronic Registration Systems, Inc." with an address of "PO Box 2026, Flint MI 48501-2026," and lender "Decision One Mortgage Company, LLC" with an address of "6060 J.A. Jones Dr., STE 1000, Charlotte, NC 28287" as interested parties to receive notice of the judicial tax sale.[1] Several other lienholders and interested

---

[1] The Petition also identified "Decision One Mortgage Company, LLC," with an address of "200 Gibraltar Road, Suite 350, Horsham, PA 19044." Based on attached record search exhibit, this appears to be the

*(continued on next page)*

parties were also identified.

The Petition requested issuance and service of a Rule to Show Cause why the Property should not be sold free and clear of all tax and municipal claims, liens, mortgages, charges, estates, and encumbrances. That same day—January 22, 2015—a judge signed the Rule.

On February 6, 2015, the sheriff served the Rule and Petition on MERS by certified mail, return receipt requested, addressed to its Flint, Michigan, address of record. On or about February 17, 2015, the sheriff received a domestic return receipt indicating that the Rule and Petition were received by a "Michael LaLonde" on behalf of MERS. The return receipt did not indicate the date of receipt by MERS, On March 18, 2015, a sheriff's return documenting service of the Rule and Petition upon MERS was filed with the court.

On February 6, 2015, the sheriff also served the Rule and Petition on Decision One by certified mail, return receipt requested, addressed to its Charlotte, North Carolina, address of record. On or about March 26, 2015,

---

address provided for lender Decision One with respect to a second mortgage on the Property, which is not at issue in this case. MERS was also the mortgagee for that second mortgage, providing the same Flint, Michigan, mailing address as it did for the first mortgage.

a sheriff's return was filed indicating that this service packet was returned by the Post Office as undeliverable, and the Post Office was unable to forward it.

On that same day—February 6, 2015—the state court entered an order authorizing advertisement of the judicial tax sale in a local newspaper of general circulation and a local legal journal. The order further provided that this advertisement would be "construed as service upon all owners, mortgage holders, lienholders, or any other party having an interest in the subject properties if service has been attempted by the Sheriff and has been unable to be made, and service has further been attempted by regular first class mail to the last known address of the affected party." On February 20, 2015, identical advertisements appeared in the *Lackawanna Jurist* and the *Scranton Times-Tribune*, stating that a judicial tax sale would take place on March 23, 2015, and that the following property would be among those exposed to sale "FREE AND CLEAR of all tax and municipal claims, mortgages, liens, charges and estates of whatsoever kind, except ground rents separately taxed":

> Sale #89 (15-CV-205): Tax Map No. 145.10-040-030, located at 747 North Lincoln Ave., Scranton, PA, real owner Tiffany F. Buck, Minimum Bid $4,055.48

On March 13, 2015, a Corporate Assignment of Mortgage was executed with respect to the Property. This instrument assigned the mortgage, Instrument Number 200601097, from MERS to Deutsche Bank. It identified the following as the record address for the assignee, Deutsche Bank: "C/O OCWEN LOAN SERVICING, LLC., 1661 WORTHINGTON ROAD, STE 100, WEST PALM BEACH, FL 33409." The assignment described the Property as "Assessor's/Tax ID No. 14510-040-030" and as "727 N LINCOLN AVE, SCRANTON, PA 18504," and the following legal description was appended to the assignment:

> ALL that certain lot, piece or parcel of land situate in the 21st Ward of the City of Scranton, County of Lackawanna and State of Pennsylvania, designated and described as follows, to wit:
>
> BEING Lot numbered seven (7), in Block numbered thirteen (13) upon the Northwesterly side of Lincoln Avenue; said Lot being forty (40) feet in width in front on said Lincoln Avenue, the same width in the rear, and one hundred forty-four (144) feet deep to a Court for public use fourteen (14) feet wide, as designated and laid out on the plot or map known as West Park, which map is duty [*sic*] recorded in the proper office for the Recording of Deeds, etc., in and for said County of Lackawanna, in Map Book Numbered 1, at pages 98 and 99, as by reference thereto had will more fully and at large appear.
>
> BEING Parcel No. 14510-040-030 and Map No. 21-120-7

Deutsche Bank recorded the assignment with the Lackawanna County

Recorder of Deeds on March 25, 2015, as Instrument Number 201504109.

On March 17, 2015, the state court entered an Order for Judicial Sale, which continued the Rule's return date until April 16, 2015, and rescheduled the judicial sale of the Property for April 20, 2015.

On March 31, 2015, an affidavit of mailing was filed by counsel for the Bureau, certifying that a copy of the Rule and Petition was sent by first class mail to Decision One at its last known address—the Charlotte, North Carolina, address of record—on March 30, 2015.[2]

On April 20, 2015, Bendex submitted the highest bid at the judicial tax sale, bidding $4,100 for the Property. On May 29, 2015, the Bureau executed a judicial sale deed conveying the Property to Bendex, free and clear of all tax and municipal claims, mortgages, liens, charges and estates except separately taxed ground rents. *See generally* 72 P.S. § 5860.610 *et seq.* The judicial sale deed described the property conveyed "all that certain property described in Schedule 'A'." Attached to the judicial sale deed was a document styled "Schedule A," which stated:

---

[2] According to this and a companion affidavit, copies were also mailed to MERS in Flint, Michigan, to Decision One at the address provided in connection with the second mortgage, to the homeowner, and to another bank that had filed judgment liens against the Property in January 2014.

Location: *747 North Lincoln Avenue*

*City of Scranton*
County of Lackawanna
State of Pennsylvania

Prior Owner: Tiffany F. Buck

Map Number: 14510-040-030

Per Deed Book, Record Book or Instrument Number: 200601096

Deed Attached.

Attached to Schedule A was a copy of the same special warranty deed attached to the Petition, which had been recorded with the Lackawanna County Recorder of Deeds on January 12, 2006, as Instrument Number 200601096. As previously noted, the special warranty deed included the following legal description of the Property:

> ALL that certain lot, piece or parcel of land situate in the 21st Ward of the City of Scranton, County of Lackawanna and State of Pennsylvania, designated and described as follows, to wit:
>
> BEING Lot numbered seven (7), in Block numbered thirteen (13) upon the Northwesterly side of Lincoln Avenue; said Lot being forty (40) feet in width in front on said Lincoln Avenue, the same width in the rear, and one hundred forty-four (144) feet deep to a Court for public use fourteen (14) feet wide, as designated and laid out on the plot or map known as West Park, which map is duty [*sic*] recorded in the proper office for the Recording of Deeds, etc., in and for said County of Lackawanna, in

> Map Book Numbered 1, at pages 98 and 99, as by reference thereto had will more fully and at large appear.
>
> BEING Parcel No. 14510-040-030 and Map No. 21-120-7
>
> BEING THE SAME premises which Betty L. Fletcher, as power of attorney for Marilyn Jean Lewis by Deed dated October 13, 2000 and recorded October 16, 2000 in Book 324, Page 327 in and for Lackawanna County granted and conveyed unto Tiffany F. Panek, GRANTOR HEREIN

Bendex recorded the judicial sale deed with the Lackawanna County Recorder of Deeds on June 11, 2015, as Instrument Number 201508793.

On June 16, 2015, Deutsche Bank instituted a mortgage foreclosure action against the Property, which appears to still remain pending. On March 10, 2016, Deutsche Bank filed this federal declaratory judgment action with respect to the Property.

## II.   LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party."

*Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

"The rule is no different where there are cross-motions for summary judgment." *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008).

> Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether

genuine issues of material fact exist.

*Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968). Thus, "when presented with cross motions for summary judgment, the Court must consider the motions separately, and view the evidence presented for each motion in the light most favorable to the nonmoving party." *Borrell v. Bloomsburg Univ.*, 63 F. Supp. 3d. 418, 433 (M.D. Pa. 2014) (citation omitted). "[E]ach movant must demonstrate that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny [both] motions. *Quarles v. Palakovich*, 736 F. Supp. 2d 941, 946 (M.D. Pa. 2010) (citing *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008)).

## III. DISCUSSION

### A. *Rooker-Feldman* Abstention

The defendants, Bendex and the Bureau, contend that we lack jurisdiction to hear this case under the *Rooker-Feldman* doctrine. "The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (per curiam) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284

(2005)). But Deutsche Bank was not a party to the underlying state court proceedings. It did not enter an appearance in the state court proceedings, and it insists that it never received notice of the proceedings (and thus the state court lacked personal jurisdiction over it). At most, having been assigned a mortgage on the Property *after* service of the Rule and Petition, it is in privity with MERS, which was a party to the judicial sale proceedings, having timely received service of the Rule and Petition. "The *Rooker-Feldman* doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment." *Id.* at 466.

Accordingly, summary judgment will be denied with respect to the defendants' contention that we lack jurisdiction in this matter under the *Rooker-Feldman* doctrine.

### B. Count I: Declaratory Judgment for an Order Voiding Deed

In Count I of the complaint, Deutsche Bank seeks a declaration that the judicial tax sale to Bendex is void *ab initio* because the Petition, the Rule, and the judicial sale deed identify the Property by the wrong street address. Deutsche Bank seeks a declaration that would effectively set aside the judicial sale of the Property. This claim clearly falls within the

ambit of the applicable six-month statute of limitations.

The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, does not have its own statute of limitations. *Algrant v. Evergreen Valley Nurseries Ltd. P'ship*, 126 F.3d 178, 181 (3d Cir. 1997). But "when a 'claim for declaratory relief could have been resolved through another form of action which has a specific limitations period, the specific period of time will govern.'" *Id.* (quoting *Town of Orangetown v. Gorsuch*, 718 F.2d 29, 41–42 (2d Cir. 1983) (applying state law)); *see also id.* at 184–85 ("[W]hen plaintiffs' claims are barred by a statute of limitations applicable to a concurrent legal remedy, then a court will withhold declaratory judgment relief in an independent suit essentially predicated upon the same cause of action. Otherwise the statute of limitations can be circumvented merely by '[d]raping their claim in the raiment of the Declaratory Judgment Act.'") (quoting *Gilbert v. City of Cambridge*, 932 F.2d 51, 58 (1st Cir. 1991)) (alteration in original).

Pennsylvania state law provides that "[j]udicial relief based on a declaratory judgment or decree may be granted whenever necessary or proper, subject to Chapter 55 (relating to limitation of time)." 42 Pa. Cons. Stat. Ann. § 7538(a). Within the cited chapter, the state legislature has

enacted a six-month limitations period for the commencement of "[a]n action or proceeding to set aside a judicial sale of property." 42 Pa. Cons. Stat. Ann. § 5522(b)(5). "Once a cause of action has accrued and the prescribed statutory period has run, an injured party is barred from bringing his cause of action." *Constantino v. Carbon Cty. Tax Claim Bureau*, 895 A.2d 72, 74 (Pa. Commw. Ct. 2006) (quoting *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005)). "A cause of action accrues as soon as the right to institute and maintain suit arises." *Id.*

> The statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations. It is the duty of the party asserting a cause of action to use all reasonable diligence to properly inform himself of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed period.

*Weik v. Estate of Brown*, 794 A.2d 907, 909 (Pa. Super. Ct. 2002) (quoting *Cappelli v. York Operating, Inc.*, 711 A.2d 481, 484–85 (Pa. Super. Ct. 1998)).

Here, the judicial tax sale took place on April 20, 2015. Deutsche Bank commenced this action on March 10, 2016, nearly a year later and well after the six-month limitation period had expired.

Deutsche Bank contends, however, that the limitation period did not

commence until it learned of the judicial tax sale in February 2016, relying upon the "discovery rule" to toll the start of the limitations period. "The discovery rule is an exception to the statute which provides that 'the statute is tolled, and does not begin to run until the injured party discovers or reasonably should discover that he has been injured and that his injury has been caused by another party's conduct.'" *Constantino*, 895 A.2d at 74–75 (quoting *Fine*, 870 A.2d at 859). "The party invoking the discovery rule has the burden of proving that it applies. In order to establish his entitlement to its application, the party must establish that he acted with reasonable diligence in determining the fact of the injury but was unable to ascertain it." *Weik*, 794 A.2d at 909 (citing *Capelli*, 711 A.2d at 485) (citation omitted).

Notwithstanding Deutsche Bank's contention that it did not receive *actual* notice of the sale until February 2016, the recording of the judicial sale deed on June 11, 2015, gave Deutsche Bank constructive notice of the conveyance, and thus the statute of limitations started to run on the date that deed was recorded. *See Weik*, 794 A.2d at 909; *see also id.* at 911 ("Clearly, the recording statute has been given effect beyond determining priority of title. It has been interpreted to give notice to the public of title

transfer and the contents of a deed."); *Poffenberger v. Goldstein*, 776 A.2d 1037, 1042 (Pa. Commw. Ct. 2001) ("The recording of a deed serves to provide public notice in whom the title resides."). Applying the discovery rule, we are compelled by applicable state law precedent to conclude that Deutsche Bank should have reasonably discovered the judicial tax sale of the Property no later than June 11, 2015, the date the deed conveying the Property to Bendex was recorded with the Lackawanna County Recorder of Deeds. *See In re Sale of Real Estate by Lackawanna Tax Claim Bureau*, No. 2027 C.D. 2013, 2014 WL 3805796, at *2 (Pa. Commw. Ct. Aug. 1, 2014); *see also Weik*, 794 A.2d at 911 ("No reasonable mind would disagree that Appellant failed to exercise due diligence in discovering his injury."). Deutsche Bank commenced this action nine months later on March 10, 2016, well after the six-month limitation period had expired.[3]

Moreover, even if this claim were not barred by the statute of limitations, it is clear that, under Pennsylvania law, Deutsche Bank's argument that a typographical error in the Property's street address

---

[3] Moreover, we note that Deutsche Bank is chargeable with notice of the judicial tax sale received by MERS prior to assignment of the mortgage, as discussed below. Relying on that notice, the discovery rule is not applicable at all, and the limitations period started running on the date of the judicial tax sale—April 20, 2015.

renders the judicial tax sale void *ab initio* is without merit. It is axiomatic that "[m]ore specific descriptions of land are given greater weight than less specific ones where there is a discrepancy. Thus, a metes and bounds description trumps a street address or a less precise descriptor. . . . [A] legal description controls over a street address." *In re Moore*, Civil Action No. 15-1853, 2016 WL 1257631, at \*2–\*3 (E.D. Pa. Mar. 31, 2016) (citations omitted); *see also In re Fedor*, Bankr. No. 5-08-bk-52485 RNO, 2009 WL 1173047, at \*2 (Bankr. M.D. Pa. Apr. 30, 2009) (legal description and Property Identification Number control over erroneous street address). *See generally In re Wagner*, 353 B.R. 106, 119 (Bankr. W.D. Pa. 2006) ("In identifying real estate subject to a properly recorded mortgage, a legal description, be it by metes and bounds, adjoinders, courses and distances, survey plots or measurements, is much more specific than a mere post office street address. As a result, courts confronted with a discrepancy in a legal description embodied in the same document routinely employ a hierarchy of accepted methods for determining the controlling description. The more precise description is favored over the less specific. Therefore, for purposes of identifying a particular piece of real estate, an accurate metes and bounds description 'trumps' a street address also recited in a

mortgage. The [metes] and bounds description controls."). This is true with respect to court papers and legal notices as well as instruments of conveyance. *See KEB Hana Bank USA, Nat'l Ass'n v. Red Mansion, LLC*, Civil Action No. 3:14-CV-01664, 2017 WL 3868517, at *2 (M.D. Pa. Sept. 5, 2017) ("A notice is not fatally insufficient by virtue of providing an inaccurate street number of the property to be sold. In fact, a notice is not fatally insufficient even where it provides no street number at all. The advertisements in the present case contained parcel and pin numbers for 'eleven tracts and pieces or panels of land with improvements' comprising the property sold. Any prospective bidder could easily determine the true location and bounds of the property for sale.") (citation omitted), *appeal filed*, No. 17-3195 (3d Cir. filed Oct. 5, 2017); *Somerville v. Hill*, 104 A. 62, 63 (Pa. 1918) (advertisement properly described premises by metes and bounds, but inaccurately described house numbers); *Erb v. Pa. Dep't of Transp.*, 312 A.2d 467, 467–68 (Pa. Commw. Ct. 1973) (court papers correctly referred to deed book and page number, but mistakenly referred to the wrong house number). Here, despite repeated use of the wrong house number—mistakenly referencing a non-existent "747 North Lincoln Avenue" instead of the correct address of 727 North Lincoln Avenue—the

Petition, the Rule, and the judicial sale deed all contained accurate legal descriptions and tax parcel numbers, as well as the correct name of the record owner of the Property.[4] The supporting exhibits attached to the Petition and Rule also contained accurate references to the correct street address.

Accordingly, summary judgment will be granted to the defendants with respect to Count I of the complaint on the ground that it is barred by the applicable statute of limitations or, in the alternative, on the merits.

### C. Count II: Declaratory Judgment for an Order That the Mortgage Was Not Divested

In Count II of the complaint, Deutsche Bank seeks a declaration that its mortgage lien on the Property was not discharged by the judicial tax sale because it did not receive adequate notice of the judicial tax sale, and thus Bendex took the Property subject to Deutsche Bank's mortgage lien.

Under Pennsylvania law, a mortgagee has a legally protected interest in a mortgaged property, and it is therefore entitled to notice reasonably calculated to apprise it of an upcoming judicial tax sale of the

---

[4] The advertisements in in the *Lackawanna Jurist* and the *Scranton Times-Tribune* did not contain a legal description, but they did contain accurate tax parcel numbers, accurate references to the state court case number, and the correct name of the record owner of the Property.

mortgaged property. *In re Monroe Cty. Tax Claim Bureau*, 91 A.3d 265, 268 n.3 (Pa. Commw. Ct. 2014) (citing *Mennonite Bd. of Missions*, 462 U.S. 791, 798 (1983), and *In re Tax Claim Bureau of Westmoreland Cty.*, 613 A.2d 634, 638 (Pa. Commw. Ct. 1992)). Section 611 of the Real Estate Tax Sale Law ("RETSL") governs service of the Rule and states:

> Service of the rule shall be made in the same manner as writs of scire facias are served in this Commonwealth.[5] When service cannot be made in the county where the rule was granted, the sheriff of the county shall deputize the sheriff of any other county in this Commonwealth, where service can be made. If service of the rule cannot

---

[5] As the Commonwealth Court has explained:

> "Scire facias" means literally "you are to make known, show cause.". . . A writ of scire facias is a mandate to the sheriff, which recites the occasion upon which it issues, which directs the sheriff to make known to the parties named in the writ that they must appear before the court on a given day, and which requires the defendant to appear and show cause why the plaintiff should not be permitted to take some step, usually to have advantage of a public record. The object of the writ of scire facias is ordinarily to ascertain the sum due on a lien of record and to give the defendant an opportunity to show cause why the plaintiff should not have execution. The writ of scire facias serves the dual purposes of a summons and a complaint, and a writ of scire facias is personal process, but the detailed requirements of a pleading are not applied to the writ of scire facias.

*In re Sale of Real Estate by Lackawanna Cty. Tax Claim Bureau*, 22 A.3d 308, 312 n.5 (Pa. Commw. Ct. 2011) (quoting *Black's Law Dictionary* 301 (9th ed. 2009) and 18 *Standard Pennsylvania Practice 2d* § 102:10 (1983)).

be made in this Commonwealth, then the rule shall be served on the person named in the rule by the sheriff, by sending him, by registered mail, return receipt requested, postage prepaid, at least fifteen (15) days before the return day of the rule, a true and attested copy thereof, addressed to such person's last known post office address. The sheriff shall attach to his return, the return receipts, and if the person named in the rule has refused to accept the registered mail or cannot be found at his last known address, shall attach evidence thereof. This shall constitute sufficient service under this act.

72 P.S. § 5860.611. "Service of the rule to show cause is the final required notice to be served on a lienholder prior to the judicial sale, and there is no requirement under [RETSL] that lienholders or landowners receive actual notice of the judicial tax sale." *In re Sale of Real Estate by Lackawanna Tax Claim Bureau*, No. 2027 C.D. 2013, 2014 WL 3805796, at *3 (Pa. Commw. Ct. Aug. 1, 2014) (quoting *In re Sale of Real Estate Northampton Cty. Tax Claim Bureau*, 874 A.2d 697, 698, 701 (Pa. Commw. Ct. 2005)) (internal quotation marks and brackets omitted); *see also Monroe Cty. Tax Claim Bureau*, 91 A.3d at 269 ("There is no requirement that the [lienholder] have actual notice of the date of the judicial tax sale, all that is required is the notice provided under Section 611 of [RETSL].").

"Although a judicial tax sale purchaser takes title to the property free and clear of all mortgages and liens, if a mortgagee does not receive

adequate notice of the judicial tax sale, which is the notice of the rule to show cause that is served pursuant to Section 611 of [RETSL], the lien is not discharged and the purchaser at the judicial tax sale takes the property subject to the lien." *Lackawanna Tax Claim Bureau*, 2014 WL 3805796, at *3 (citing *Plank v. Monroe Cty. Tax Claim Bureau*, 735 A.2d 178, 182 n.10 (Pa. Commw. Ct. 1999)) (citation omitted); *see also Muhlenberg Twp. Auth. v. Fisher*, 503 A.2d 1022, 1024 (Pa. Commw. Ct. 1986) ("Failure to give notice does not discharge the lien and purchasers take the property subject thereto."). "Section 611 requires that notice must be sent to a lienholder's last known post office address," and, generally, the lienholder's last known address is that provided in the recorded lien documents. *See Lackawanna Tax Claim Bureau*, 2014 WL 3805796, at *4 (citing *Mfrs. & Traders Tr. Co. v. Luzerne Cty. Tax Claim Bureau*, 56 A.3d 36, 39 (Pa. Commw. Ct. 2012)); *see also Mfrs. & Traders Tr. Co.*, 56 A.3d at 39–40 (mailing of notice to an address not listed in recorded lien documents did not comply with Section 611).

Here, the Bureau did use the address on the recorded mortgage instrument. The sheriff delivered the Rule and Petition to MERS, the actual and record mortgagee at that time, by certified mail, return receipt

requested, addressed to MERS at the Flint, Michigan, address listed on the recorded mortgage instrument. Moreover, service of the Rule and Petition on MERS via certified mail was successful, and no further action was necessary for the state court to obtain personal jurisdiction over MERS, the current mortgagee at the time. *See Lackawanna Tax Claim Bureau*, 2014 WL 3805796, at *5–*6 ("[]T]he Bureau served [mortgagee] with the Rule in accordance with Section 611 of [RETSL] and *that is all the notice required by the Law . . . .*") (emphasis added) (citation omitted).

Deutsche Bank, however, contends that notice to MERS was not effective notice as to it. Although MERS was the actual and record mortgagee when the Petition was filed in January 2015 and when the Rule was served in February 2015, MERS assigned the mortgage to Deutsche Bank on March 13, 2015, and the assignment was recorded on March 25, 2015. Accordingly, Deutsche Bank argues that its mortgage on the Property should not be discharged by the judicial tax sale because Deutsche Bank itself—the actual and recorded mortgagee when the judicial tax sale took place on April 20, 2015—was not served with the Rule and Petition.

But "[t]he rule [in Pennsylvania] is that the assignee of a mortgage

takes it subject to all defenses available against the assignor and that the recording acts in no way give the assignee a better right than the assignor." *Kepler v. Kepler*, 199 A. 198, 203 (Pa. 1938); *see also In re Fowler*, 425 B.R. 157, 197 & n.53 (Bankr. E.D. Pa. 2010) (quoting *Kepler*). Under RETSL, the Bureau was required to conduct a title search prior to filing its Petition, the state court was required to enter the Rule to Show Cause, and the sheriff was required to serve the Rule and Petition on all interested parties identified by the Bureau and named in the Petition. *See* 72 P.S. §§ 5860.610, .611; *Plank*, 735 A.2d at 183. On the return date, if the state court was satisfied that the facts stated *in the Petition* were true, it was required to order the judicial tax sale. *See* 72 P.S. § 5860.612; *Plank*, 735 A.2d at 183. There is no requirement under RETSL that a second title search be conducted at any time after a petition is filed. *See* 72 P.S. §§ 5860.610, .611, .612; *Plank*, 735 A.2d at 183 ("[T]he Bureau owe[s] [lienholders] no duty to provide correct and current title information. Clearly, the Law requires that a search showing all outstanding claims accompany the bureau's petition to the trial court. The Law does not, however, require that the search be up-to-date as of the date the bureau files its petition for tax sale.").

In point of fact, the search conducted by the Bureau in this case was correct and current as of the date when the Petition was filed. It was also correct and current as of the date when the Rule was served. Indeed, not only was the mailing of the Rule to MERS reasonably calculated to apprise the then-current mortgagee of the upcoming judicial tax sale, it did so *successfully*, thus gaining personal jurisdiction over MERS and its assigns. *See Kepler*, 199 A. at 203; *see also Fowler*, 425 B.R. at 197 & n.53. It was only after the Bureau had adequately served the Rule upon the mortgagee, MERS, that ownership of the mortgage at issue was transferred to Deutsche Bank. Deutsche Bank's position necessarily implies that the Bureau should have spontaneously conducted a second title search at some point before the judicial tax sale, after it had already successfully served the actual and record mortgagee, and despite no requirement under RETSL that it do so. If we were to adopt Deutsche Bank's position, we "would impose upon taxing bodies a duty to *continually track changes in title for all properties subject to sale even where notice to the record owner* [*or lienholders*] *has been confirmed*," a proposition that has been expressly rejected by the courts of Pennsylvania. *See First Horizon Home Loan Corp. v. Adams Cty. Tax Claim Bureau*, 847 A.2d 774, 777 n.8 (Pa. Commw. Ct.

2004) (emphasis in original).

Moreover, we note that the state court also authorized service by publication as a method of service reasonably calculated to give potential heirs and assigns of the Property's owner and lienholders notice of the pending judicial tax sale and an opportunity to be heard. *See Sisson v. Stanley*, 109 A.3d 265, 284–85 (Pa. Super. Ct. 2015). Identical advertisements providing notice of the upcoming judicial tax sale of the Property were published on February 20, 2015, in the *Lackawanna Jurist* and the *Scranton Times-Tribune*. Notwithstanding mistaken reference to house number "747" in the advertisements placed by the Bureau, the published notices adequately identified the Property by providing an accurate tax parcel number, an accurate reference to the state court case number, and the correct name of the Property's record owner, Tiffany F. Buck. *See KEB Hana Bank USA*, 2017 WL 3868517, at *2; *Somerville*, 104 A.at 63. Thus, service by publication of the upcoming judicial tax sale of the Property conferred personal jurisdiction over potential heirs and assigns, including Deutsche Bank, to whom the mortgage had yet to be assigned.

Accordingly, summary judgment will be granted to the defendants

with respect to Count II of the complaint on the merits.

## IV.  CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment (Doc. 30) will be granted and the plaintiff's motion for summary judgment (Doc. 36) will be denied.

An appropriate Order follows.

Dated: March 29, 2018                    *s/ Joseph F. Saporito, Jr.*
                                         JOSEPH F. SAPORITO, JR.
                                         United States Magistrate Judge